IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:21-cv-00020-MR

| | | |
|---|---|---|
| JANICE HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| KILOLO KIJAKAZI,[1] Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 12] and the Defendant's Motion for Summary Judgment [Doc. 17].

## I.  PROCEDURAL HISTORY

The Plaintiff, Janice Hall ("Plaintiff"), filed an application for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of April 28, 2018. [Transcript ("T.") at 15]. The Plaintiff's application was denied initially on November 29, 2018, and upon reconsideration on August 21, 2019. [Id.]. Upon the Plaintiff's request, a

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is therefore substituted in this action as the named defendant. See Fed. R. Civ. P. 25(d).

hearing was held on May 29, 2020, before an Administrative Law Judge ("ALJ"). [Id.]. On June 18, 2020, the ALJ issued a written decision denying the Plaintiff benefits, finding that the Plaintiff was not disabled within the meaning of the Act since the alleged onset date of April 28, 2018. [Id. at 24]. The Appeals Council denied the Plaintiff's request for review on December 8, 2020, thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 1]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support

2

a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must

4

assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering this burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled

5

to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since April 28, 2018, the alleged onset date, and that the Plaintiff meets the insured status requirements through December 31, 2023. [T. at 17]. At step two, the ALJ found that the Plaintiff has severe impairments, including: polyarthralgia, fibromyalgia, obesity, carpal tunnel syndrome, gout, left wrist synovitis, hypertension, major depressive disorder, panic disorder, and posttraumatic stress disorder. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id.]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, has the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently reach, handle and finger with the left upper extremity. The claimant can occasionally climb ladders, ropes and scaffolds but can frequently climb ramps or stairs, balance and stoop. She must avoid concentrated exposure to hazards. She is limited to simple, routine, repetitive tasks. She can have only occasional changes in work processes, procedures or setting. She can have occasional, superficial interaction with the general public and coworkers. She can only occasionally perform tasks that involve reading or spelling.

6

[Id. at 19].

At step four, the ALJ identified the Plaintiff's past relevant work as a sockmaker, a packer, a sorter, and a box folding machine operator. [Id. at 23]. The ALJ observed, however, that the Plaintiff is "unable to perform any past relevant work." [Id.]. At step five, based upon the testimony of the vocational expert ("VE"), the ALJ concluded that, considering the Plaintiff's age, education, work experience, and RFC, the Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including: housekeeper cleaner, production assembler, and stocker. [Id. at 24]. The ALJ therefore concluded that the Plaintiff was not disabled from April 28, 2018, the alleged onset date, through June 18, 2020, the date of the ALJ's decision. [Id.].

## V. DISCUSSION[2]

As one of her assignments of error, the Plaintiff argues that ALJ failed to adequately account for her panic disorder in the RFC. [Doc. 13 at 4]. The Defendant, on the other hand, argues that the ALJ adequately accounted for the Plaintiff's panic disorder when formulating the RFC. [Doc. 18 at 20].

---

[2] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

7

Residual functional capacity (RFC) is an administrative assessment by the Commissioner of what a claimant can still do despite his or her physical or mental limitations. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); 20 C.F.R. §§ 404.1546(c); 404.943(c). Social Security Ruling 96-8p explains how adjudicators should assess a claimant's RFC. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. SSR 96-8p; see also Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted). This "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio, 780 F.3d at 636 (internal quotation marks omitted). "[T]he ALJ must *both* identify evidence that supports [her] conclusion and build an accurate and logical bridge from that evidence to [her] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (brackets and internal quotation marks omitted). Such analysis is

a "necessary predicate" to determining whether substantial evidence supports the ALJ's findings. Monroe, 826 F.3d at 189 (quoting Radford, 734 F.3d at 295).

Here, the ALJ found that the Plaintiff's panic disorder is a severe impairment because it significantly limits her ability to perform basic work activities. [T. at 17]. However, after making that determination, the ALJ failed to independently evaluate each of the limiting effects of the disorder and failed to explain which RFC limitations—if any—were imposed to account for the Plaintiff's panic disorder. In discussing the Plaintiff's alleged symptoms, the ALJ noted that "[a]t the hearing, the claimant said that she was missing work because of panic attacks." [Id. at 20]. The ALJ said nothing else about the Plaintiff's description of her panic attacks and went on to summarize her allegations of symptoms caused by other impairments before concluding that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. The objective medical evidence and the claimant's conservative course of treatment did not support the extent of her allegations that she cannot work because of her impairments.

9

> These factors also showed that the claimant is no
> more limited than the above range of light work.

[Id.]. The ALJ did not, however, identify *which* of the Plaintiff's statements were inconsistent with the medical evidence, nor did she identify which of the Plaintiff's impairments had been treated conservatively. [Id.].

In formulating the Plaintiff's RFC, the ALJ stated that:

> [T]he nature of the claimant's anxiety and her testimony about panic attacks indicated social restrictions as set forth above. However, the conservative management of the claimant's psychological condition and the extent of the findings on exam (Exhibit 3F and Exhibit 6F) did not support a finding of greater psychological limitations than those set forth in the established residual functional capacity.

[Id. at 22]. The ALJ did not connect the specific findings of the exams she cites to her RFC determination. Further, the ALJ did not provide any explanation of her conclusion that the "conservative management of the claimant's psychological condition" indicated that additional limitations were unnecessary.

It is conceivable that the ALJ tried to account for the Plaintiff's panic attacks by including the RFC limitations to simple, routine, repetitive tasks; only occasional changes in work processes, procedures or setting; and only occasional, superficial interaction with the general public and coworkers. However, if that was the ALJ's intention, she does not make that clear in her

opinion or provide any analysis as to why those limitations are sufficient. That lack of analysis is especially troubling given that the primary limitation the Plaintiff alleges regarding her panic disorder is that her panic attacks are so severe they require immediate medical treatment and cause her to miss work. [Id. at 43]. Thus, even if the limitations to simple tasks, occasional work changes, and superficial interaction with others were conceivably included to mitigate the Plaintiff's psychological impairments, they do very little to account for the limitations in work attendance that the Plaintiff alleges.

Further, because the Plaintiff also has the severe psychological impairments of posttraumatic stress disorder and major depressive disorder, it is unclear which of the RFC limitations conceivably relating to psychological impairment were included to specifically account for the Plaintiff's panic disorder.

Without additional explanation, it is not clear how the ALJ accounted for the limitations caused by the Plaintiff's panic attacks in the RFC determination or why she declined to impose additional functional limitations. As such, the ALJ failed to provide an analysis of the panic disorder that both sufficiently identifies the evidence that supports her conclusions and builds a logical and accurate bridge from that evidence to her conclusions. Thus, the Court is unable to effectively review the ALJ's assessment of the

11

Plaintiff's panic disorder. Because the Court cannot determine whether the ALJ properly evaluated the Plaintiff's alleged intensity, persistence, and limiting effects of her panic attacks, the Court cannot say that the Plaintiff's RFC was properly addressed or that the ALJ's ultimate decision was supported by substantial evidence. See Patterson v. Comm'r., 846 F.3d 656, 662 (4th Cir. 2017). For the reasons stated, the Court concludes that remand is required.

## VI. CONCLUSION

Because this Courts lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. Upon remand, the ALJ should analyze the limiting effects of the Plaintiff's panic disorder and identify what functional limitations are imposed as a result of those limitations, including a narrative discussion explaining why she reached her conclusions and how the record supports including or rejecting a functional limitation.

In light of this decision, the Plaintiff's other assignments of error need not be addressed at this time but may be addressed by her on remand.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 17] is **DENIED**, and the Plaintiff's

12

Case 5:21-cv-00020-MR Document 19 Filed 10/31/22 Page 12 of 13

Motion for Summary Judgment [Doc. 12] is **GRANTED**. Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and this case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: October 30, 2022

Martin Reidinger
Chief United States District Judge